# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

RIDDELL, INC.,       )
            )
    Plaintiff,      )
            )
    vs.        )    Case No. 16 C 4496
            )
KRANOS CORPORATION,    )
d/b/a SCHUTT SPORTS,     )
            )
    Defendant.     )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Riddell has sued Kranos Corporation, which does business as Schutt Sports, for alleged infringement of two of Riddell's football helmet patents:  U.S. Patent Nos. 8,528,118 (the '118 patent) and 8,938,818 (the '818 patent).  In May 2017, the Court issued a claim construction order and denied Schutt's motions for partial summary judgment on a number of the infringement claims based on the '818 patent.  *See Riddell, Inc. v. Kranos Corp.*, No. 16 C 4496, 2017 WL 2349714 (N.D. Ill. May 30, 2017) (memorandum opinion and order denying partial summary judgment); *Riddell, Inc. v. Kranos Corp.*, No. 16 C 4496, 2017 WL 2264347 (N.D. Ill. May 24, 2017) (claim construction memorandum opinion and order).

Schutt has moved for summary judgment of non-infringement and invalidity, and Riddell has filed a cross-motion for partial summary judgment regarding the validity of claim 6 of the '118 patent as well as infringement.  For the reasons stated below, the Court grants summary judgment of non-infringement in favor of Schutt regarding claims

11 and 50 of the '818 patent with respect to three specific models of the accused helmets but denies the rest of Schutt's motion for summary judgment. The Court grants summary judgment in favor of Riddell with respect to infringement on all '818 patent claims,[1] but denies summary judgment of infringement on claim 6 of the '118 patent and otherwise denies Riddell's cross-motion for summary judgment.

## Background

Riddell manufactures and sells football helmets, among other types of sports equipment. It owns the '118 and '818 patents at issue in the present litigation. Both patents are for protective sports helmets. The '118 patent, which was originally issued in September 2013, was reexamined and amended in September 2014. The '818 patent, which was filed as a continuation of the '118 patent, was issued in January 2015. Both patent applications claimed entitlement to the May 1, 2002 filing date of a provisional application filed with the Patent and Trademark Office (PTO).

Schutt also manufactures and sells sports helmets. Riddell filed suit against Schutt in April 2016, alleging that Schutt's "Vengeance" line of football helmets infringes a number of claims of the '118 and '818 patents.[2]

In August 2016, Schutt filed petitions with the Patent Trial and Appeal Board (the Board) for *inter partes* review (IPR) of all of the patent claims asserted by Riddell. Specifically, Schutt sought review of claims 1-7, 11-13, 25-28, 30, and 32-37 of the '118

---

[1] With the exception that the Adult Vengeance Z10, Youth Vengeance A3, and the Youth Vengeance Hybrid models, which do not infringe claims 11 and 50 of the '818 patent.

[2] Riddell also claimed infringement of another patent, U.S. Patent No. 8,813,269, but that claim was dismissed in September 2017. *See* dkt. no. 157, Order of Judgment of Noninfringement of U.S. Patent No. 8,813,269.

patent and claims 1-3, 5-6, 8-12, 14-16, 18-19, 21-25, 27, 29-32, 34, 36-52, 56-58, and 60-65 of the '818 patent. The Board instituted review with respect to claims 1, 2, 5, 11, 12, 25, 27, 28, 30, 32-35, and 37 of the '118 patent and claims 41, 42, 49, 51, 56-58, and 62-65 of the '818 patent. In February 2018, the Board issued final written decisions with respect to each of the two proceedings. With respect to the '118 patent, the Board concluded that Schutt had shown, by a preponderance of the evidence, that claims 1, 11, 12, 25, 28, 33-35, and 37 were unpatentable as obvious under 35 U.S.C. § 103, but had failed to prove that claims 2, 5, 27, 30, and 32 were unpatentable. *See* dkt. no. 220, Def.'s Notice of Suppl. Authorities in Supp. of Mot. for Summ. J., Ex. 1 (PTAB Decision on '118 Patent) at 83. As for the '818 patent, the Board determined that Schutt proved by a preponderance of the evidence that claims 41, 49, 51, 56, 57, 62, 63, and 65 were unpatentable as obvious, but failed to prove claims 42, 58, and 64 unpatentable. *See id.*, Ex. 2 (PTAB Decision on '818 Patent) at 46.

Following the Board's issuance of these decisions, Riddell stipulated to the dismissal of all claims of infringement regarding any of the claims of the '118 patent except for those based on claim 6 and all claims of infringement regarding any of the claims of the '818 patent except for those based on claims 1, 2, 5, 6, 11, 40, 50, and 58. *See* dkt. no. 201, Joint Notice of Stipulation Regarding Dismissal of Certain Claims of U.S. Patent No. 8,528,118; dkt. no. 203, Joint Notice of Stipulation Regarding Dismissal of Certain Claims of U.S. Patent No. 8,938,818. Accordingly, Riddell's infringement claims in this lawsuit rest on claim 6 of the '118 patent and claims 1, 2, 5, 6, 11, 40, 50, and 58 of the '818 patent.

Claim 6 of the '118 patent depends from unasserted claim 5, which in turn

depends from unasserted claim 1.  Claim 1 of the '118 patent discloses:

> A football helmet comprising:
> a plastic shell configured to receive a head of a wearer of the helmet, the shell having:
>> a front region,
>> a crown region,
>> a rear region,
>> two side regions wherein each side region has an ear flap with an ear opening,
>> a raised central band integrally formed as part of the shell and extending across the crown region to the rear region,
>> a first plurality of vent openings formed in the shell outside of the raised central band, wherein the first plurality of vent openings are aligned, and positioned along a first side of the raised central band; and
> a chin strap assembly that releasably secures the helmet to the wearer.

Compl., Ex. C ('118 Patent Ex Parte Reexamination Certificate) 1:24-1:40.  Claim 5 adds the limitation that the raised central band "has a width defined by a pair of opposed side walls that extend transversely from an outer surface of the shell."  *Id.* 1:41-1:44.  Claim 6 adds the limitation that "the side wall has a curvilinear configuration as it extends between the crown region and the rear region of the shell."  Compl., Ex. B ('118 Patent) 14:45-14:47.

Claim 1 of the '818 patent is an independent claim; the rest of the asserted claims of the '818 patent are dependent claims.  Specifically, claims 2, 5, and 6 depend from claim 1; claim 11 depends from claims 9 and 1; claim 40 depends from claims 39, 36, and 29, and; claims 50 and 58 depend from claim 41.  Claim 1 of the '818 patent is largely representative of the claimed invention:

> A football helmet comprising:
> a plastic shell configured to receive a head of a wearer of the helmet, the shell having:
>> a front region,
>> a crown region,
>> a rear region,

4

two side regions wherein each side region has an ear flap with an
    ear opening,
a lower edge surface extending generally from one of the ear flaps
    and along the rear region to the other of the ear flaps,
an inner shell wall surface,
an outer shell wall surface,
an offset band extending around the rear region and above the
    lower edge surface, the offset band including
            an offset band wall having an inner band surface
            offset from the inner shell wall surface, and an outer
            band surface offset from the outer shell wall surface,
            and
            a pair of angled transition walls, extending between
            the offset band wall and the rear region;
a raised central band integrally formed as part of the shell and
    extending across a crown region to the rear region, the
    raised central band having a width defined by a pair of
    opposed sidewalls,
a first plurality of vent openings residing outside of the raised
    central band and aligned along a first side of the raised
    central band, and
a second plurality of vent openings residing outside of the raised
    central band and aligned along a second side of the raised
    central band;
a face guard secured to the shell by a face guard connector; and
a chin strap assembly that releasably secures the helmet to the wearer.

Compl., Ex. A ('818 Patent) 14:49-15:17.

Schutt has moved for summary judgment on the issues of invalidity, non-

infringement, and Riddell's entitlement to lost profits. Schutt first contends that the

asserted claims of the patents-in-suit are not entitled to the claimed priority date of May

1, 2002 and are therefore invalid as anticipated by Riddell's own helmets pursuant to 35

U.S.C. § 102. Alternatively, Schutt argues that even if the patents-in-suit are afforded a

2002 priority date, all of the asserted claims are invalid as anticipated or obvious under

35 U.S.C. §§ 102 or 103. Schutt further contends that summary judgment of non-

infringement is warranted on all asserted claims because the accused helmets lack the

following limitations: (1) a raised central band; (2) a raised central band having a width

defined by a pair of opposed side walls; (3) a plurality of vent openings aligned along the side of the raised central band, and; (4) a side wall that has a curvilinear configuration as it extends between the crown region and the rear region of the shell. Schutt also argues that three specific models of Vengeance helmets do not infringe claims 11 and 50 of the '818 patent because they are not sold with inflatable crown pads. Lastly, Schutt contends that summary judgment is warranted on the issue of Riddell's entitlement to lost profits because Riddell cannot prove the absence of acceptable non-infringing substitutes for its helmets.

For its part, Riddell contends that disputed issues of material fact preclude a grant of summary judgment to Schutt with respect to the priority date and the validity of all the asserted claims of the '818 patent, as well as the issue of lost profits. Riddell has moved for summary judgment of infringement on the ground that at least some of Schutt's Vengeance helmets meet all of the limitations of the asserted claims. It has also moved for summary judgment regarding the validity of claim 6 of the '118 patent.

**Discussion**

In reviewing cross-motions for summary judgment, the Court takes the motions one at a time, construing all facts and drawing all reasonable inferences in favor of the non-moving party. *Advance Cable Co., LLC v. Cincinnati Ins. Co.*, 788 F.3d 743, 746 (7th Cir. 2015). A party is entitled to summary judgment only if it shows that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). There is a genuine issue of material fact, and summary judgment is therefore precluded, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## A. Infringement questions

"An infringement analysis involves the two-step process of construing the claims and comparing the properly construed claims to the accused product." *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1203 (Fed. Cir. 2017) (internal quotation marks and citation omitted). Infringement is a question of fact. *EMD Millipore Corp. v. AllPure Techs., Inc.*, 768 F.3d 1196, 1200-01 (Fed. Cir. 2014). Summary judgment on the issue of infringement is appropriate, however, "when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." *U.S. Philips Corp. v. Iwasaki Elec. Co.*, 505 F.3d 1371, 1374-75 (Fed. Cir. 2007) (citation omitted). Riddell does not rely on the doctrine of equivalents in opposing summary judgment.

Several of the limitations discussed by the parties in their respective summary judgment briefs are common to all or most of the asserted claims. The Court will address each of these limitations in the order in which they are presented by the parties.

### 1. Raised central band (all asserted claims)

Schutt first contends that no reasonable jury could find that the Vengeance helmets meet the "raised central band" limitation present in all asserted claims.[3] Schutt argues that the "saw-tooth offset feature" contained in the Vengeance helmets is not a raised central band within the plain and ordinary meaning of the term. Def.'s Mem. in

---

[3] This limitation is contained in unasserted independent claim 1 of the '118 patent, from which asserted claim 6 depends; asserted independent claim 1 of the '818 patent, from which asserted claims 2, 5, 6, and 11 also depend; unasserted independent claim 29 of the '818 patent, from which asserted claim 40 depends, and; unasserted independent claim 41 of the '818 patent, from which asserted claims 50 and 58 depend. *See* '118 Patent Ex Parte Reexamination Certificate 1:32; '818 Patent 15:3, 17:12, 18:25.

Supp. of Mot. for Summ. J. (Def.'s Mem.) at 34; *see also Riddell*, 2017 WL 2264347, at

*3 (the phrase "raised central band" should be given its plain and ordinary meaning).

The saw-tooth offset feature is pictured at three different angles below:



Def.'s Mem. at 34.  Schutt does not appear to dispute (nor could it) that this feature is

raised and in the center of the helmet.  Rather, Schutt's argument rests largely on the

proposition that it cannot be considered a band.  Citing a number of online dictionaries

that define "band" as "a thin, flat strip of some material,"[4] "a stripe, as of color or

decorative work,"[5] and "something that confines or constricts while allowing a degree of

movement,"[6] among other definitions,  Schutt contends that no reasonable jury could

conclude that the saw-tooth offset feature is a band because it does not confine or

constrict and it "is not a thin, flat strip of material" or "a decorative stripe or strip."  *Id.* at

34.

The Court is unpersuaded by this selective comparison of the saw-tooth offset

feature to dictionary definitions of the word "band."  Although the feature may not be a

---

[4] *Band*, Dictionary.com, http://www.dictionary.com/browse/band?s=t (last visited July 5, 2018)

[5] *Id.*

[6] *Band*, Merriam-Webster, https://www.merriam-webster.com/dictionary/band?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (last visited July 5, 2018)

flat strip that confines or constricts, it fits comfortably within several of the other definitions provided by Schutt. For example, it could easily be considered "a strip . . . or a stripe . . . differentiable (as by color, texture, or structure) from the adjacent material or area." *Band*, Merriam-Webster. The offset feature, which runs as a stripe from the front of the helmet to the back, is differentiable from the adjacent areas of the helmet because it is raised. It could also be considered "a stripe, as of color or decorative work." *Band*, Dictionary.com.

Schutt also argues that no reasonable jury would consider the saw-tooth offset feature to be a band because, rather than being continuous and substantially parallel, the feature's sides have a zig-zag, saw-tooth design. According to Schutt, because the side walls of the saw-tooth offset feature are neither continuous nor substantially parallel, it would not be recognized as a band by a person skilled in the art. *See* Lukas Decl. in Supp. of Def.'s Mot. for Summ. J (Lukas Decl.), Ex. 92 (Posner Rebuttal Report) ¶¶ 59-60.

Despite Schutt's assertions that the dictionary definitions discussed above provide support for its argument, none of the definitions describe a band as necessarily or even generally having "continuous" and / or "substantially parallel" sides. More importantly, although Schutt's expert, Jonathan Posner, has opined that a person of ordinary skill in the art would understand a band to have "boundaries defined by substantially parallel side walls or sides; or, at a minimum, by side walls or sides that have a continuous geometry," *id.* ¶ 56, this Court has already rejected Schutt's proposed construction of a raised central band as having "a width defined by a pair of opposed side walls," as well as Schutt's contention that the walls of the band must be

parallel and "continuous and uninterrupted—that is, without zigs and zags." *Riddell*,

2017 WL 2264347, at *5, 7-8. In any case, even if the side walls of the saw-tooth offset

feature are not continuous, the raised surface offset by the saw-tooth design extends

continuously from the crown to the rear of the helmet. *See, e.g.*, Lukas Decl., Ex. 83

(Shewchenko Infringement Report), App. B at 5-6. No reasonable jury could conclude

that Schutt's saw-tooth offset feature is not a "raised central band" within the plain and

ordinary meaning of that term—and thus find that the Vengeance helmets lack a raised

central band—simply because of the feature's saw-tooth configuration.

Riddell has cross-moved for summary judgment on the issue of infringement.

Riddell asserts that "[a]pplying plain meaning, the accused products unquestionably

include an integrally formed raised central band extending across the crown region to

the rear region." Pl.'s Mem. in Supp. of Cross-Mot. for Summ. J. (Pl.'s Mem.) at 7. In

support, it cites Schutt's schematic drawings of the accused helmets, a physical sample

of one of the accused helmet models, and claim charts in which Riddell's expert,

Nicholas Shewchenko, labels the saw-tooth offset feature as a "raised central band

integrally formed as part of the shell." Shewchenko Infringement Report, App. A at 8-9;

*Id.*, App. B at 5-6. It is apparent even from this limited evidence that no reasonable jury

could find that the Schutt helmets at issue lack a raised central band, even when the

evidence is viewed in the light most favorable to Schutt. It is evident from the pictures

of the helmets as well as the physical model that the saw-tooth offset feature is not only

"raised" and "central" with respect to the rest of the shell, but also a "band" within the

plain and ordinary meaning of that term. The Court therefore finds, pursuant to Federal

Rule of Civil Procedure 56(g), that the accused helmets contain a "raised central band"

as a matter of law.

### 2. Width defined by a pair of opposed side walls (claim 6 of the '118 patent, claims 1, 2, 5, 6, 11, and 40 of the '818 patent)

Schutt next argues that even if a jury could find that the saw-tooth offset feature constitutes a raised central band, its helmets do not infringe most asserted claims because the saw-tooth offset feature does not have a "width defined by a pair of opposed side walls."[7]  First, Schutt argues that no reasonable jury could find the width of the saw-tooth offset feature is defined by side walls because there are no "separate discernable" side walls along certain sections of it.  Def.'s Mem. at 36.  Schutt's expert identifies the areas lacking a side wall as follows:



Posner Rebuttal Report ¶ 73; *see also id.* ¶¶ 71-72, 74.  Schutt also contends that this limitation is not met because the saw-tooth offset feature has more than a single pair of

---

[7] This limitation is contained in unasserted claim 5 of the '118 patent from which asserted claim 6 depends; asserted independent claim 1 of the '818 patent, from which asserted claims 2, 5, 6, and 11 also depend, and; unasserted independent claim 29 of the '818 patent, from which asserted claim 40 depends.  *See* '118 Patent Ex Parte Reexamination Certificate 1:42-1:43; '818 Patent 15:5-15:6, 17:15-17:16.

side walls, divided by the gaps where there are no side walls at all.  Lastly, Schutt asserts that to the extent the feature has side walls, they are not "opposed" because they do not always face away from each other (the direction of the walls being defined by a line that is perpendicular to their surface).

 As Riddell notes, however, Schutt's suggestion that a side wall must be "a separate discernable surface that connects two different surfaces" in all places in order to define the width of the raised central band, *id.* at 36, appears to ignore the fact that the raised central band must also be "integrally formed as part of the shell," which this Court has construed to mean "not including a separate element attached to the shell." *Riddell*, 2017 WL 2264347, at *9.  The fact that Schutt's expert has identified certain regions of the saw-tooth offset feature where "the outer surface of the saw-tooth offset feature bends towards and directly interfaces with the outer shell surface" instead of creating a "definable visual or tactile distinguishing boundar[y] such that all three surfaces can be separately discerned," in no way precludes a reasonable factfinder from concluding that the saw-tooth offset feature has a width defined by a pair of opposed side walls, within the plain meaning of that phrase.  Posner Rebuttal Report ¶¶ 71-72.

The proposition that the saw-tooth offset feature cannot be found to have a width defined by a *pair* of opposed side walls because the walls are not two straight lines but are instead several pairs of walls configured in a zig-zag, saw-tooth pattern likewise fails.  As previously noted, the Court has already rejected the notion that to have a width defined by a pair of opposed side walls, the side walls of the raised central band must be oriented in a straight line, without zigs and zags.  *See Riddell*, 2017 WL 2264347, at

*7. Riddell's expert has identified the relevant "pair" of side walls as follows:



Shewchenko Infringement Report, App. B at 9; *see also id.*, App. A at 9; Lukas Decl., Ex. 85. Lastly, the Court has also previously rejected the contention that side walls may only be "opposed" if they have outer surfaces that always face away from each other. *See Riddell*, 2017 WL 2264347, at *7. Webster's Third New International Dictionary defines "opposed" as "opposite to each other." *Opposed,* Webster's Third New Int'l Dictionary 1583 (1993). To the extent that the side walls identified by Riddell's expert define the outer limits of the raised band on either side, they are "opposite to each other." There is no question that a reasonable jury could therefore find that the Vengeance helmets' saw-tooth offset feature has a width defined by a pair of opposed side walls. Indeed, it is evident merely from looking at the accused helmets that the saw-tooth offset feature *does* have a width defined by a pair of opposed side walls, in the way that a person of ordinary skill in the art would understand the plain and ordinary meaning of that phrase. After Schutt's previously rejected and overly narrow claim constructions are set aside, even when the evidence is viewed in the light most favorable to Schutt, no reasonable factfinder could conclude otherwise. The Court therefore finds that the accused helmets meet the "width defined by a pair of opposed

side walls" limitation as a matter of law.

### 3. Vent openings aligned along the sides of the raised central band (all asserted claims)

Schutt further contends that the accused products do not infringe any of the asserted claims because they lack two or more vent openings "aligned along"[8] or "aligned, and positioned along"[9] a side of the saw-tooth offset feature. According to Schutt's expert, these vent opening limitations are not met because (1) the major axes of the vent openings in the accused helmets are not parallel to the path connecting them, such that the vent openings are not aligned with respect to each other, and (2) no plurality of vent openings in the accused products can possibly be "aligned along" or "aligned, and positioned" along a side wall because the side wall of the saw-tooth offset feature would need to be continuous and substantially straight in order for at least two vent openings to be aligned with it. *See, e.g.*, Lukas Decl., Ex. 84 (Dec. 6, 2017 Posner Dep.) 48:8-45:11; Posner Rebuttal Report ¶¶ 94-95. Riddell responds that not only do these arguments contradict the position taken by Schutt at the claim construction hearing, but they also rely on out-of-context statements by Riddell and its expert to improperly restrict the scope of the vent opening limitations.

---

[8] The limitation that a plurality of vent openings are "aligned along" a side of the raised central band is contained in asserted independent claim 1 of the '818 patent, from which asserted claims 2, 5, 6, and 11 also depend; unasserted independent claim 29 of the '818 patent, from which asserted claim 40 depends, and; unasserted independent claim 41 of the '818 patent, from which asserted claims 50 and 58 depend. *See* '818 Patent 15:7-15:13, 17:17-17:22, 18:28-18:35.

[9] The limitation that a plurality of vent openings are "aligned, and positioned along" a side of the raised central band is contained in the amended version of unasserted independent claim 1 of the '118 patent, from which asserted claim 6 depends. *See* '118 Patent Ex Parte Reexamination Certificate 1:35-1:38.

In the claim construction decision, the Court observed that "Schutt appear[ed] to agree" that the claim construction language relating to the positioning and alignment of vent openings "simply discloses that any vent openings are located completely outside the raised central band." *Riddell*, 2017 WL 2264347, at *10. It is also true that Schutt did not argue in its claim construction briefs that a plurality of vent openings had to be aligned with respect to each other, and Schutt makes no attempt in its briefs to explain why such an interpretation of the claim language is appropriate. As previously discussed, Schutt did argue, in the context of the raised central band side wall limitation, that the sides of the raised central band would have to be continuous and substantially straight, but the Court rejected that proposed construction. *Id.* at *7. Riddell has presented evidence from which a reasonable jury could conclude that two or more vent openings in the Vengeance helmets are indeed aligned along the sides of the saw-tooth offset feature, as each vent is aligned with the portion of the wall to which it is adjacent:



Shewchenko Infringement Report, App. A at 10.



*Id.*, App. A at 11. Although Schutt points to various statements by Riddell and its expert Shewchenko that it contends establish that a line between vent holes must always be parallel to a side wall in order to be considered aligned with it, those statements were made in context of specific discussions about certain other helmets and they do not suggest that is necessarily the case with respect to raised central bands that have zig-zag side walls. *See* Pl.'s Resp. to Def.'s Corrected Statement of Material Facts ¶¶ 11, 14-18, 21, 153; *see also* Lukas Decl., Ex. 15 (Nov. 28, 2017 Shewchenko Dep.) 13:21-14:1 ("[T]he term parallel is not forcing the alignment of the vent holes with the wall. The vent holes are following the sidewall. So the sidewall is always the reference."). A reasonable jury could conclude from the above image that the vent openings are, in fact, aligned along the side walls of the saw-tooth offset feature Schutt is therefore not entitled to summary judgment on this basis.

With regard to Riddell's cross-motion, the question is whether a reasonable jury could find that two or more vent openings in the Vengeance helmets are *not* aligned along the sides of the saw-tooth offset feature. Schutt's expert's explanation for why a person of ordinary skill in the art would not consider this limitation met by the accused helmets appears to rely in large part on the unwarranted assumption that the sides of

the raised central band simply cannot have a zig-zag configuration. *See, e.g.*, Posner Rebuttal Report ¶¶ 94, 98-100. Schutt's expert also asserts that the vent openings cannot be considered aligned with the sides of the saw-tooth offset feature specifically because, as demonstrated below, "any line that connects two vent holes [shown in blue] . . . cannot be aligned with any side or side wall boundary [shown in red]":



*Id.* ¶ 95. But the problem with this line of argument is that it is wholly unsupported by the claim language, which only specifies that a plurality of vent openings are "aligned along" or "aligned, and positioned along" a side of the raised central band and gives no indication that the lines connecting the vent holes must always be parallel to the side walls themselves. The Court concludes that there is no genuine dispute that the vent openings of the accused helmets are "aligned along" or "aligned, and positioned along" a side of the saw-tooth offset feature; even when the evidence is viewed in the light most favorable to Schutt, it would not be reasonable for a factfinder to conclude otherwise. The accused helmets therefore meet the vent opening limitations as a matter of law.

#### 4. Curvilinear configuration of side wall (claim 6 of the '118 patent)

Schutt next argues that the Vengeance helmets do not infringe claim 6 of the '118 patent because the saw-tooth offset feature does not have a side wall with a "curvilinear configuration as it extends between the crown region and the rear region of the shell." '118 Patent 14:45-14:47. Curvilinear is defined in Webster's Third New International Dictionary as "consisting of or bounded by curved lines" or "following a curve." *Curvilinear,* Webster's Third New Int'l Dictionary 558. The phrase "curvilinear configuration" was defined during claim construction as describing "walls that curve in the horizontal plane as they extend from the front to the rear of the shell." *Riddell*, 2017 WL 2264347, at *15. As the Court noted in the claim construction order, this construction is consistent with the Patent Trial and Appeal Board's description of the side wall highlighted in the following figure as having a "curvilinear shape" in that the wall curves outward as it crosses the shell:



Dkt. no. 117 (Pl.'s Resp. to Xenith) at 24-25; *see also Riddell*, 2017 WL 2264347, at *14-15 (citing Pl.'s Resp. to Xenith at 24-25). Schutt contends that because the alleged side walls of the saw-tooth offset feature are discontinuous and travel in a zig-zag path,

they would not be considered curvilinear or curving in the horizontal plane by a person of ordinary skill in the art, but it does not explain *why* a discontinuous, zig-zag wall could not be considered to curve overall in the horizontal plane. Riddell, for its part, contends that the zig-zag configuration of the saw-tooth offset feature "plainly meets" the curvilinear configuration limitation, Pl.'s Mem. at 13, but once again, the only evidence it cites in support of that contention are Schutt's schematic drawings of the accused helmets, a physical sample of one of the accused helmet models, and a claim chart in which its expert has labeled a side wall of the saw-tooth offset feature as a "side wall having [a] curvilinear configuration." Shewchenko Infringement Report, App. B at 10. Although Riddell did not need to point to more evidence than that to establish that the raised central band, side wall, and vent opening limitations are met by Schutt's helmets, viewing the evidence in the light most favorable to Schutt, it is not entirely clear from the schematic drawings, the physical sample, or the cited claim chart that this particular "curvilinear configuration" limitation is met.

Because neither party makes any attempt to actually explain *why* the side walls of the saw-tooth offset feature would or would not be considered curvilinear, neither party has met its burden to establish that they are entitled to judgment as a matter of law on this issue. *See, e.g.*, *Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) (the Court "will not scour a record to locate evidence supporting a party's legal argument" where that party has "failed to discuss the facts relevant to [its] claim . . . [and relied] instead almost entirely on a series of string citations to affidavits and other documents in the record"). Accordingly, the Court denies both parties' motions for summary judgment regarding whether the accused products infringe claim 6 of the '118

patent.

### 5. Inflatable crown pads (claims 11 and 50 of the '818 patent)

Lastly, Schutt contends that three specific models of Vengeance helmets—the Adult Vengeance Z10, Youth Vengeance A3, and the Youth Vengeance Hybrid—cannot infringe claims 11 and 50 of the '818 patent because they are not sold with inflatable crown pads.[10]  Riddell concedes that those three particular models do not infringe claims 11 and 50 of the '818 patent for lack of an inflatable crown pad.  Instead, it asserts that, with the exception of those three helmet models, the accused products do infringe all of the asserted claims.  Accordingly, the Court grants summary judgment of non-infringement of claims 11 and 50 with respect to the Adult Vengeance Z10, Youth Vengeance A3, and the Youth Vengeance Hybrid helmets only (Schutt does not dispute that the other Vengeance helmets are sold with an inflatable crown pad).

### 6. Remaining claim limitations

Riddell contends that, in addition to meeting the previously discussed limitations, the accused helmets meet all of the remaining limitations of the '818 patent claims.  *See* Pl.'s Mem. at 11-15.  Schutt has forfeited any argument to the contrary by failing to respond to Riddell on this point.  *See, e.g.*, *Potts v. Manos*, No. 11 C 3952, 2017 WL 4340157, at *4 (N.D. Ill. Sept. 29, 2017).  In any case, as explained below, the Court finds that these limitations are indeed met by the accused helmets.

Schutt concedes that the Vengeance helmets meet the remaining limitations of the independent claims (asserted claim 1 and unasserted claims 29 and 41 of the '818

---

[10] Claims 11 and 50 of the '818 patent include inflatable crown shock absorbing pads. *See* '818 Patent 15:47, 18:64-18:65.

patent and unasserted claim 1 of the '118 patent) from which all the asserted claims depend. *See* Def.'s Resp. to Pl.'s Statement of Material Facts ¶¶ 8-19. Schutt likewise does not dispute that the accused products[11] meet the remaining offset band limitations of asserted dependent claims 2, 5, and 6 of the '818 patent and the remaining padding-related limitations of asserted dependent claims 11 and 50 and unasserted dependent claim 9 of the '818 patent, from which claim 11 depends. Def.'s Resp. to Pl.'s Statement of Material Facts ¶¶ 20-22; *id.* at ¶¶ 23, 25.

That leaves asserted dependent claims 40 and 58 of the '818 patent and unasserted claim 5 of the '118 patent, from which claim 6 depends.

Asserted claim 40 of the '818 patent recites "[t]he football helmet of claim 39, wherein the first and second vent openings are substantially adjacent a respective one of the pair of opposed sidewalls defining the central band." '818 Patent 18:14-18:16. Claim 39, in turn, recites "[t]he football helmet of claim 36, wherein the shell further includes a first vent opening aligned along a first side of the raised central band, and a second vent opening aligned along a second side of the raised central band." *Id.* 18:9-18:12. And claim 36 recites "[t]he football helmet of claim 29, further comprising a crown shock absorbing pad disposed in the crown region adjacent the inner wall surface." *Id.* 17:65-17:67. Schutt does not dispute that the accused products meet the additional limitation in claim 36. *See* Def.'s Resp. to Pl.'s Statement of Material Facts ¶ 24. Schutt does dispute that the accused helmets feature a "first vent opening aligned along a first side of the raised central band, and a second vent opening aligned along a

---

[11] With the exception of the Adult Vengeance Z10, Youth Vengeance A3, and the Youth Vengeance Hybrid helmets, as noted above.

second side of the raised central band," but the Court has already rejected its argument on that point.  It is clear from the picture below that the accused helmets meet this limitation:



Pl.'s Mem. at 15.  It is also clear from the picture that the accused helmets meet the additional limitation of claim 40 that the "first and second vent openings are substantially adjacent a respective one of the pair of opposed sidewalls defining the central band." '818 Patent 18:14-18:16.  Accordingly, there is no genuine dispute that the accused helmets meet all the limitations of asserted dependent claim 40.

Claim 58 of the '818 patent recites the following:

The football helmet of claim 41, wherein the shell has a frontal face guard connection component for securement of an upper, frontal portion of the face guard, wherein the first and second plurality of vent openings include a first vent opening, and wherein the distance between an outer edge of the first vent openings exceeds a width of the frontal face guard connection component.

*Id.* 19:33-19:39.  Schutt does not dispute that the shell of the accused helmets has a frontal face guard connection component for securement of an upper, frontal portion of the face guard.  *See* Def.'s Resp. to Pl.'s Statement of Material Facts ¶ 26.  Nor does Schutt meaningfully dispute either (1) that the helmets include a first and second plurality of vent openings that include a first vent opening or (2) that the distance

between an outer edge of the first vent openings exceeds the width of the frontal face guard connection component. *Id.* There is thus no genuine dispute that the accused helmets meet the limitations of claim 58.

Lastly, unasserted claim 5 of the '118 patent reads "[t]he football helmet of claim 1, wherein the raised central band has a width defined by a pair of opposed side walls that extend transversely from an outer surface of the shell." '118 Patent Ex Parte Reexamination Certificate 1:41-1:44. The Court has rejected Schutt's contention that the saw-tooth offset feature does not have a width defined by a pair of opposed side walls, and Schutt does not dispute that the side walls extend transversely from an outer surface of the shell. *See* Def.'s Resp. to Pl.'s Statement of Material Facts ¶ 27; Def.'s Mem. at 33-37. Accordingly, although summary judgment of infringement or non-infringement regarding the "curvilinear configuration" limitation of claim 6 of the '118 patent is not warranted, the Court finds, pursuant to Federal Rule of Civil Procedure 56(g), that the accused helmets contain all the other remaining limitations of that claim and unasserted claims 5 and 1 from which it depends as a matter of law.

### 7. Infringement conclusion

In summary, neither party is entitled to summary judgment with respect to claim 6 of the '118 patent. But even when the evidence is viewed in the light most favorable to Schutt, no reasonable jury could find that the accused helmets do not meet every limitation recited in the asserted '818 patent claims. The Court therefore denies Schutt's motion for summary judgment of non-infringement in its entirety and denies Riddell's cross-motion for summary judgment of infringement on claim 6 of the '118 patent. The Court grants Riddell's cross-motion for summary judgment of infringement with respect

to claims 1, 2, 5, 6, 11,[12] 40, 50,[13] and 58 of the '818 patent.

## B.    Validity questions

### 1.    Priority date

Schutt has moved for summary judgment of invalidity with respect to all of the asserted claims.  Schutt's first invalidity argument rests on its contention that the asserted claims of the patents-in-suit are not entitled to a priority date of May 1, 2002.[14] Schutt argues that the '118 and '818 patents are not entitled to that priority date because Riddell's May 2002 provisional application does not disclose the integrally formed raised central band limitation contained in all of the asserted claims.  Riddell concedes that the provisional application does not mention a "raised central band integrally formed as part of the shell," but it argues that there exists a question of fact regarding whether certain figures included in the provisional application adequately disclose such a limitation.

"[A] patent application is entitled to the benefit of the filing date of an earlier filed application only if the disclosure of the earlier application provides support for the claims of the later application, as required by 35 U.S.C. § 112."  *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306 (Fed. Cir. 2008); *see also* 35 U.S.C. § 112(a) ("The specification shall contain a written description of the invention, and of the manner and

---

[12] With the exception of the Adult Vengeance Z10, Youth Vengeance A3, and the Youth Vengeance Hybrid helmets.
[13] With the exception of the Adult Vengeance Z10, Youth Vengeance A3, and the Youth Vengeance Hybrid helmets.
[14] If the patents-in-suit are not entitled to the May 2002 priority date, Riddell appears to concede that the asserted claims would be invalid as anticipated, because Riddell began selling commercial embodiments of both patents more than a year prior to June 3, 2011, the filing date of the application for the '118 patent.  *See* Pl.'s Resp. to Def.'s Corrected Statement of Material Facts ¶¶ 175-176.

process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same. . . .").  To meet the written description requirement, the prior application's disclosure must convey with reasonable clarity to those skilled in the art that the inventor was in possession of the invention at that time. *PowerOasis*, 522 F.3d at 1306.  As this Court has already explained in the context of Schutt's prior motions for partial summary judgment, drawings alone may be found to satisfy the written description requirement.  *Riddell*, 2017 WL 2349714, at *3; *see also Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1366 (Fed. Cir. 2009). Although the issue of whether the written description requirement is met is a question of fact, the Court may grant summary judgment in cases where no reasonable jury could return a verdict for the non-moving party.  *PowerOasis*, 522 F.3d at 1307.

As previously noted, the Court construed the term "integrally formed" to mean "not including a separate element attached to the shell."  *Riddell*, 2017 WL 2264347, at *9.  Schutt contends that Riddell cannot now argue that the figures in the provisional application meet the written description requirement for the integrally formed raised central band limitation because Riddell and its expert, Shewchenko, repeatedly asserted during IPR proceedings that a person of ordinary skill in the art cannot discern whether a band is "integrally formed" as part of the shell from a drawing or figure without a detailed cross-sectional view and accompanying description.  For example, during the prosecution of a related patent, Riddell asserted that this limitation could not be clearly discerned from the Ispas design patent because there was "absolutely no disclosure in Ispas as to how the alleged raised band is formed with respect to the

helmet shell."  Lukas Decl., Ex. 56 at 11-12.  Riddell has also stated during IPR proceedings that "whether a raised central band is '*integrally formed as part of the shell*' is not a structural / visual feature that can be discerned from a drawing.  Nothing in the photographs of Sears, or the drawings of Rappleyea or Ispas, provides any indication or information regarding <u>how</u> the alleged raised central bands are formed or attached." Lukas Decl., Ex. 10 at 38 (emphasis in original).  When asked during his deposition to read Riddell's aforementioned assertion that "whether a raised central band is '*integrally formed as part of the shell*' is not a structural / visual feature that can be discerned from a drawing" and state whether he agreed with it, Shewchenko stated that he did.  *See* Lukas Decl., Ex. 16, 44:7-44:19.

Riddell responds that although it has argued that drawings in certain prior art references did not disclose an integrally formed raised central band, neither it nor Shewchenko have taken the position that a drawing could <u>never</u> disclose to a person of ordinary skill in the art that a particular feature is integrally formed.  In his October 2017 report, Shewchenko stated the following:

> While Dr. Posner points to snippets of my deposition testimony from the IPR proceedings, these comments are taken out of context, and were part of a discussion of particular asserted prior art references.  It is not my belief that a patent drawing, figure, or photograph can *never* provide evidence regarding whether a particular feature is integrally formed with respect to the shell.  Nor would it be necessary to obtain a cross-section of a shell of a helmet to determine if it is integrally formed in all cases.  Where, as here, that information is clearly discernable from the patent drawings, such additional information would not be necessary.

Hanewicz Decl. in Supp. of Pl.'s Cross-Mot. for Summ J., Ex. 1 (Shewchenko Validity Report) ¶ 449 (emphasis in original).  Shewchenko further opined that a person of ordinary skill in the art would, in fact, understand the following figures as depicting a

raised central band integrally formed as part of the shell because the band "clearly blends into the shell at its starting and ending points":



*Id.* ¶¶ 446-447. Schutt vaguely asserts that the doctrines of prosecution disclaimer and estoppel preclude a genuine dispute of material fact on the issue of whether the above figures constitute a written description of an integrally formed raised central band based on the positions Riddell has previously taken. As Riddell notes, however, Schutt "neither acknowledges nor attempts to satisfy the legal factors to be considered with respect to such doctrines (and may not raise them for the first time in reply)." Pl.'s Mem. at 39. The Court agrees. *See, e.g.*, *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001) ("It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.")

(citation omitted). In any case, because the prior statements cited by Schutt were made in reference to photographs and figures of specific prior art and not in reference to the figures in the provisional application at issue here, the Court is not persuaded that Riddell's and Shewchenko's statements are necessarily inconsistent with the assertion that the figures of the provisional application would convey an integrally formed raised central band with reasonable clarity to those skilled in the art. Viewing the evidence in the light most favorable to Riddell, the Court concludes that Shewchenko's opinion creates a genuine dispute regarding whether the integrally formed raised central band claims were disclosed by the provisional application and thus entitled to a priority date of May 1, 2002; accordingly, it is a question of fact for the jury that may not be resolved on summary judgment. *See Riddell*, 2017 WL 2349714, at *5 (same conclusion with respect to the offset band claims).

**2.     Invalidity**

Schutt next argues that even if the patents-in-suit are entitled to the claimed 2002 priority date, all of Riddell's asserted claims are nonetheless invalid as anticipated and / or obvious pursuant to 35 U.S.C. §§ 102 and 103. Riddell has cross-moved for summary judgment of validity with respect to claim 6 of the '118 patent, and it asserts that there are disputed factual issues precluding summary judgment of invalidity for each of the asserted claims of the '818 patent.

Because patent claims are presumed valid, an accused infringer must prove invalidity by clear and convincing evidence. *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 95 (2011); *Tokai Corp. v. Easton Enters., Inc.*, 632 F.3d 1358, 1367 (Fed. Cir. 2011); *see also* 35 U.S.C. § 282(a) ("Each claim of a patent (whether in independent,

dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim."). Under 35 U.S.C. § 102, a claim is invalid as anticipated "if each and every limitation is found either expressly or inherently in a single prior art reference." *King Pharm., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1274 (Fed. Cir. 2010) (citation omitted). Under 35 U.S.C. § 103, a claim is invalid as obvious "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill" in the relevant art. 35 U.S.C. § 103(a) (2006).[15] The Court must consider the following four factors to determine whether a claim is invalid as obvious: (1) the "scope and content of the prior art"; (2) "differences between the prior art and the claims at issue"; (3) "the level of ordinary skill" in the art; and (4) "[s]uch secondary considerations as commercial success, long felt but unsolved needs, failure of others." *Graham v. John Deere Co. of Kan. City,* 383 U.S. 1, 17 (1966). "The ultimate judgment of obviousness is a legal determination." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007). "Where . . . the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate." *Id.*

Schutt contends that the following prior art references, alone or in combination, render all of the asserted claims invalid as anticipated and / or obvious:

---

[15] Because the applications for the patents-in-suit were filed prior to the effective date of the America Invents Act, the pre-Act version of section 103 governs. *See Insite Vision Inc. v. Sandoz, Inc.*, 783 F.3d 853, 857 n.1 (Fed. Cir. 2015).

- Sears 2425 helmet

- Wilson F2000 helmet

- VSR4 helmet

- Halstead patent and the Bike Pro Edition embodiment

- Sears 2442 helmet

- JOFA helmet

- Ispas patent

- Tang patent

Schutt argues that even if Riddell denies that the cited prior art references disclose the certain limitations, each of the Sears, Wilson, VSR4, and JOFA prior art references, alone or in combination, renders obvious all of the independent claims (unasserted claim 1 of the '118 patent; asserted claim 1 of the '818 patent, and; unasserted claims 29 and 41 of the '818 patent) from which the asserted claims depend. *See* Def.'s Mem. at 23, 24, 25 (alone); *Id.* at 26 (in combination). According to Schutt, it would be obvious to a person skilled in the art to create a helmet that includes all of the limitations of the relevant independent claims plus:

> (1) the additional limitation of asserted claim 6 of the '118 patent, as disclosed in Sears 2442 or Ispas (*id.* at 29);
>
> (2) the additional limitations of asserted claims 2, 5, and 6 of the '818 patent, as disclosed in Halstead, Bike, or JOFA (*id.* at 30);
>
> (3) the additional limitations of unasserted claims 9 and 36 of the '818 patent, as disclosed in Sears, Wilson, VSR4, Halstead, Bike, JOFA, and VSR4, and the additional limitations of the asserted claims 11 and 50, as disclosed in VSR4 (*id.* at 30);
>
> (4) the additional limitations of unasserted claim 39 and asserted claim 40 of the '818 patent, as disclosed in Sears, Wilson, Halstead, or Bike (*id.* at 31), and;

(5) the additional limitation of asserted claim 58 of the '818 patent, as disclosed in unspecified prior art (*id.* at 31-32),

thereby rendering all of the asserted claims invalid as obvious.

Riddell responds that Schutt has waived many of the invalidity arguments raised in its motion for summary judgment because it did not include several of the above prior art references in the list it provided to Riddell of the 25 "primary" references that it intended to rely upon to demonstrate the invalidity of the asserted claims. Pl.'s Mem. at 18. The Court declines to find Schutt's invalidity arguments waived on this basis, however, because both parties addressed the references at issue in their expert reports and thus Riddell is not unfairly prejudiced. *See, e.g.*, *Sloan Valve Co. v. Zurn Indus., Inc.*, No. 10 C 204, 2013 WL 6132598, at *24 (N.D. Ill. Nov. 20, 2013) (invalidity defense missing from final invalidity and unenforceability contentions not waived where it was asserted in expert report and the patentee was clearly on notice of the argument).

Riddell also contends that Schutt has failed to establish that several of the references upon which it relies for its anticipation and obviousness arguments qualify as prior art with respect to the patents-in-suit. Riddell identifies the following issues:

- **Sears 2425 helmet:** Because Schutt has not established that the black and gold helmet pictured in Exhibit D to its summary judgment brief corresponds to any of the models depicted in the catalog excerpt provided, it has failed to establish that the black and gold model is prior art;

- **Wilson F2000 helmet:** Because Schutt has not established that the green helmet pictured in Exhibit I to its summary judgment brief corresponds to the cited catalog excerpt, it has failed to establish that the helmet is prior art;

- **VSR4 helmet:** Because Schutt has not established that the white helmet pictured in Exhibit E to its summary judgment brief corresponds to the cited catalog excerpt, it has failed to establish that the helmet is prior art;

- **Bike Pro Edition helmet:** Because Schutt has not established that the Bike helmet pictured in Exhibit G to its summary judgment brief corresponds to the

cited advertisement and Riddell's expert has identified differences between the helmets, Schutt has failed to establish that the Bike helmet is prior art;

- **Sears 2442 helmet:** Because Schutt has not established that the Sears 2442 helmet referenced in Posner's expert report corresponds to the cited catalog excerpt, it has failed to establish that the helmet is prior art, and;

- **JOFA helmet:** Because Schutt has not established that certain helmets pictured in Exhibit H to its summary judgment brief correspond to the cited catalog, it has failed to establish that the helmets are prior art.

Instead of directly and specifically addressing each of the above contentions, Schutt summarily asserts that it has met its burden to show the references in question are prior art because it has shown that each has "***same name, same model number, and / or same physical appearance*** as the helmet models disclosed in the catalogs or advertisements" and refers the Court to nearly 40 facts listed in its Rule 56.1 statement. Def.'s Reply in Supp. of Mot. for Summ J. (Def.'s Reply) at 3 (emphasis in original). One of the pictures of the black and gold helmet referred to as a Sears 2425 helmet does indeed show a 2425-003 model number. *See* Def.'s Mem., Ex. D at 4. Shewchenko has opined, however, that "it is not possible to tell for certain whether the black and gold helmet stamped as 'Sears 2425-003' corresponds to the '6 C 2425F' model listed in the catalog" because only a small portion of the Sears 2425 helmet advertised in the catalog is visible. Shewchenko Validity Report ¶ 94.

The Court's review of the references in question reveals that the white JOFA helmet pictured in Exhibit H does display a model number—395—that corresponds with one of the model numbers in shown in the relevant catalog excerpt, but the model number of the black JOFA helmet included in the same exhibit is not visible. *See* Def.'s Mem., Ex. H at 1, 4; Lukas Decl., Ex. 73. Additionally, as Shewchenko has pointed out, the black helmet does not appear to be assembled correctly. Shewchenko Validity

Report ¶ 81.  The pictures of the other references do not reveal model numbers and do

not appear to be otherwise authenticated.  Although Schutt may well be able to

establish that such references were on the market prior to the relevant priority date, it

has not done so here.  For that reason, the Court concludes that Schutt may not rely on

these references—aside from the white JOFA helmet—for purposes of summary

judgment.

Even if Schutt had established that all of the above references constitute prior

art, however, summary judgment would not be warranted because there are genuine

factual disputes with respect to the content of this prior art.  For example, although

Schutt contends that the Halstead patent and Bike embodiment lack only the raised

central band limitation of the independent claims from which the asserted claims

depend, Shewchenko has opined that they also fail to disclose any of the relevant vent

opening limitations[16] as well as the angled transition walls of the offset band limitation.[17]

---

[16] Schutt states in its reply brief that the Patent Trial and Appeal Board held that
"Halstead meets the vent opening limitations," but as far as the Court can tell from the
pages of the decision Schutt cites, the Board held only that certain *combinations* of
Halstead and other prior art would meet the vent opening limitations.  *See* PTAB
Decision on '118 Patent at 13 n.6, 35, 51-52, 74-75; PTAB Decision on '818 Patent at
32, 34.  The Court declines to address the various collateral estoppel arguments raised
by Schutt in its reply brief because they all appear to relate to arguments regarding
combinations of prior art or other issues that the Court does not reach in this opinion
due to the disputes of fact regarding the content of the individual prior art references.
*See* Def.'s Reply at 3, 5, 9-12.

[17] Schutt contends that Riddell has implicitly conceded that the offset band of Halstead
and Bike contains angled transition walls because it argued in the context of the figures
included in the May 2002 provisional application that the change in depth indicated by
certain lines "necessarily[ ] means that angled transition walls reside between the offset
band wall and the other portions of the shell."  Def.'s Reply at 5 (emphasis omitted).
The Court fails to see how Riddell's arguments about a particular figure in the 2002
provisional application constitute an admission that a different figure in an entirely
different patent (or a picture of another different helmet) discloses angled transition
walls.

Shewchenko Validity Report ¶¶ 54-62, 71-76.  Likewise, whereas Schutt asserts that the Sears and Wilson helmets fail to disclose only elongated vent openings and the offset band, Shewchenko has opined that neither the Sears 2425 nor Wilson F2000 discloses the additional limitations that such vent openings be aligned or positioned along a side of a raised central band.  *Id.* ¶¶ 95-96, 114-117.  These disputes regarding the content of the Halstead, Bike, Sears 2425, and Wilson prior art are material because Schutt relies heavily on them to argue not only that the independent claims from which the asserted claims depend are obvious and / or anticipated but also that the dependent claims themselves are invalid.[18]  *See* Def.'s Mem. at 15-17, 21-22, 24-25, 26, 28, 30-31. In light of these factual disputes regarding the content of the prior art referenced by Schutt, summary judgment of invalidity based on either anticipation or obviousness is not warranted with respect to any of the asserted claims.

Riddell has cross-moved for summary judgment of validity with respect to claim 6 of the '118 patent on the ground that Schutt has not presented evidence or argument to support its contention that claim 6 is invalid beyond the unsupported[19] assertion that the

---

[18] Schutt generally asserts that to the extent any limitations of the independent claims are identified by Riddell as missing from the cited prior art, they are disclosed by "other Prior Art in the field."  Def.'s Mem. at 18.  In support of this assertion, Schutt cites over 100 facts from its Rule 56.1 statement and over 500 pages of exhibits.  *Id.* ("*See, e.g.*, SOF ¶¶ 26-50, 53-56, 58-60, 63-68, 72-144; *see also* Exs. B-I; *see also* Ex. 82.").  As the Seventh Circuit has explained, "[a] brief must make all arguments accessible to the judges, rather than ask them to play archaeologist with the record."  *DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999).  It is Schutt's burden on its own motion for summary judgment to make its arguments accessible to the Court, and it has failed to meet that burden on this point.

[19] Schutt cites paragraphs 57 and 62 of its Rule 56.1 statement as well as Exhibits 57 and 68 in support of its assertion that the Sears 2442 and Ispas helmets disclose the additional limitation of claim 6, but paragraph 57 simply states that "The Sears Fall and Winter 1963 Catalog lists for sale football helmet model number '6 G 2442F," and paragraph 62 simply reproduces certain figures disclosed as part of the Ispas patent.

Sears 2442 helmet and Ispas patent disclose the limitation of a side wall (of the raised central band) having a curvilinear configuration. Schutt does, however, reference certain figures in the Ispas patent that could be considered to disclose a side wall with a curvilinear configuration:



Lukas Decl., Ex. 68. Because this is Riddell's motion, the evidence must be viewed in

Neither paragraph references a curvilinear configuration. Exhibit 57, entitled "Declaration of Thad M. Ide in Support of Riddell, Inc.'s Motion To Dismiss or Transfer to the Northern District of Illinois" has no bearing on the issue, and Exhibit 68 is a reproduction of the Ispas patent figures. *See* Lukas Decl., Exs. 57 and 68.

the light most favorable to Schutt. Additionally, as previously explained, there are disputed issues of material fact regarding the content of much of the prior art relied upon by Schutt for its section 103 invalidity arguments.[20] The Court therefore declines to grant summary judgment of validity with respect to claim 6 of the '118 patent.

## C.    Lost profits

Schutt has also moved for summary judgment that Riddell is not entitled to lost profits because it cannot prove the absence of acceptable non-infringing substitutes for its helmets and because Schutt could have quickly and easily designed a non-infringing substitute that would have captured much of the market share occupied by the allegedly infringing helmets.

To recover lost profits in a patent infringement case, "the patentee bears the burden of proof to show a reasonable probability that, but for infringement, it would have made the sales that were made by the infringer." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1380 (Fed. Cir. 2017) (internal quotation marks and citation omitted). This but-for causation may be proven using what is known as the *Panduit* test. *Id.* Under the *Panduit* test, the patentee must show the following: "(1) demand for the patented product; (2) an absence of acceptable, noninfringing

---

[20] The parties' experts also dispute whether the Ispas design patent is within the scope of the protective helmet field. Posner opines that it is, because it discloses side pads, and "pads are necessary only if the helmet performs a protection function." Lukas Decl., Ex. 82 (Posner Report) ¶ 62 n.3. Shewchenko opines that it is not, because it does not include attachment points for a face guard, chin strap, or other securement features one would expect to find in a protective helmet. Shewchenko Validity Report ¶ 169. According to Shewchenko, the fact that Ispas discloses side pads does not necessarily place it within the protective helmet field because "[t]he inclusion of padding could simply be provided for the purpose of the wearer's comfort, to prevent it from wobbling around on the head when worn." *Id.*

substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of profit that would have been made." *Id.* (citing *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978)). Summary judgment is appropriate if the patentee relies on the *Panduit* test but cannot establish one of its elements. *See, e.g.*, *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1551-52 (Fed. Cir. 1994).

Schutt first argues that Riddell cannot establish entitlement to lost profits because a number of non-infringing football helmets that would have been acceptable to consumers in terms of both price and performance were available during the relevant accounting period. As Riddell points out, however, the *Panduit* test is not the only method by which a patentee may show a reasonable probability that it would have made the sales made by the infringer but for that infringement. *See, e.g.*, *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003) ("A patentee may resort to any method showing, with reasonable probability, entitlement to lost profits 'but for' the infringement."). Under the market share approach, a patentee "may satisfy the second *Panduit* element by substituting proof of its market share for proof of the absence of acceptable substitutes." *BIC Leisure Prod., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1219 (Fed. Cir. 1993). "This market share approach allows a patentee to recover lost profits, *despite the presence of acceptable, noninfringing substitutes*, because it nevertheless can prove with reasonable probability sales it would have made 'but for' the infringement." *Id.* (emphasis added).

Riddell asserts that the presence of non-infringing alternatives does not preclude entitlement to lost profits because it seeks lost profits only for the sales it would have made but for Schutt's alleged infringement "based on its established (and undisputed)

37

market share in the Varsity segment" of the market. Pl.'s Mem. at 46. After eliminating

Schutt's infringing sales, Riddell's damages expert, John C. Jarosz, calculated that

Riddell would be expected to have an 81.4% share of the Varsity market. This

calculation "allows for the fact that Schutt (through its offering of non-infringing helmets)

[and others] would have captured a portion of the infringing Schutt sales in relation to

their strength in the historical Varsity business." Lukas Decl., Ex. 87 (Jarosz Report) ¶

115. Schutt responds that Riddell's market share calculation is inappropriate because it

is premised on the faulty assumption that Schutt would not have slightly modified the

allegedly infringing helmet design to create a different helmet that was "virtually

identical" but did not infringe on Riddell's patents-in-suit during the relevant accounting

period. Def.'s Mem. at 44. Schutt's expert opined that altering the placement of the

vent openings as depicted below would result in a nearly identical, non-infringing

substitute:



Posner Rebuttal Report ¶ 120. Schutt's damages expert, Michael K. Milani, has opined

that Schutt could have fully commercialized this "Hypothetical Design Around" helmet within 75 days. Def.'s Mem. at 44; *see also* Lukas Decl., Ex. 88 at 74. Schutt contends that consumers would have bought a disproportionately higher amount of this helmet relative to Schutt's market share because it is "virtually identical" to the infringing helmets that were actually sold. Def.'s Reply at 16. In support of this argument, Schutt cites *Fuji Photo Film Co. v. Jazz Photo Corp.*, 249 F. Supp. 2d 434 (D.N.J. 2003), in which the district court held that a patentee was not entitled to lost profits based on proof of its own market share because the alleged infringer "could have sold a non-infringing alternative" that looked just like the products it actually sold during the accounting period. *Id.* at 455. As the district court explained, in light of this outwardly identical alternative, it was not likely that the alleged infringer "would have surrendered its entire share of the disposable camera market." *Id.*

There is no doubt that "a fair and accurate reconstruction of the 'but for' market . . . must take into account, where relevant, alternative actions the infringer foreseeably would have undertaken had he not infringed." *Grain Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1350-51 (Fed. Cir. 1999). Nonetheless, the Federal Circuit has warned that mere speculation or conclusory assertions will not suffice to overcome the inference that an alleged alternative that was not on the market during the relevant accounting period was not available as a non-infringing substitute at that time. *Id.* at 1353 ("After all, the infringer chose to produce the infringing, rather than noninfringing, product. Thus, the trial court must proceed with caution in assessing proof of the availability [and acceptability] of substitutes not actually sold during the period of infringement.").

Schutt's expert asserts that the hypothetical redesign would have been an available, acceptable substitute because it "is not likely to be appreciably different from the existing Vengeance helmet shell in terms of fit, impact resistance, rigidity, durability, and / or the appearance of comfort or heat management." Posner Rebuttal Report ¶ 121. But although Posner explains that the front region of the helmet—which is one of the most commonly impacted regions—will maintain its structural rigidity because the front set of vent openings are left outside the saw-tooth offset feature, he does not go on to specifically explain why the placement of the remaining vents *inside* the saw-tooth offset feature would not affect the structural rigidity of other portions of the helmet. *See id.* ¶ 122. And as Riddell points out, Schutt has provided no evidence that the hypothetical redesign has ever been produced or actually tested for safety or anything else. Moreover, Riddell's expert, Shewchenko, has opined that "[t]he inclusion of vent openings *within* the raised central band, as shown in [Schutt's] hypothetical design . . . would create areas of less structural rigidity, which could affect the durability and impact protection of the helmet if no other changes were made." Lukas Decl., Ex. 94 ¶ 8.

Because this is Schutt's motion for summary judgment, the Court must construe the facts and draw all reasonable inferences in favor of Riddell. In the absence of any testing to refute Shewchenko's opinion that the inclusion of the vent openings within the saw-tooth offset feature could affect the safety of the helmet, the Court concludes that the parties' conflicting expert testimony creates a genuine issue of material fact regarding the acceptability and availability of Schutt's hypothetical redesign, which in turn, affects any determination regarding the propriety of Riddell's use of the market share approach. *See Fuji Photo Film Co.*, 249 F. Supp. 2d at 455. The Court therefore

denies Schutt's motion for summary judgment on the issue of lost profits.

## Conclusion

For the foregoing reasons, the Court grants summary judgment of non-infringement on claims 11 and 50 of the '818 patent with respect to three specific models of the accused helmets (the Adult Vengeance Z10, Youth Vengeance A3, and the Youth Vengeance Hybrid) and grants summary judgment of infringement on claims 1, 2, 5, 6, 40, and 58 of the '818 patent with respect to all accused helmets and on claims 11 and 50 of the '818 patent with respect to all accused helmets except for the Adult Vengeance Z10, Youth Vengeance A3, and the Youth Vengeance Hybrid models. The Court denies the rest of Schutt's motion for summary judgment [dkt. no. 174] and Riddell's cross-motion for summary judgment [dkt. no. 208].  The case is set for an in-person status hearing on August 3, 2018 at 8:45 a.m. for the purpose of setting a trial date and discussing the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  July 26, 2018